IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2315 ST. PAUL STREET, LLC,      :

 Plaintiff,      :

v.      :      Civil Action No. GLR-10-3641

HARTFORD FIRE INSURANCE      :
COMPANY,

 Defendant.      :


### MEMORANDUM OPINION

This matter is before the Court on Defendant Hartford Fire Insurance Company's ("Hartford") Motion for Summary Judgment. (ECF No. 34). This case involves Hartford's denial of coverage, under a builder's risk policy, for Plaintiff 2315 St. Paul Street, LLC's ("St. Paul") loss of building fixtures, construction equipment, and other items stolen by a subcontractor during building renovations. The issue before the Court is whether Hartford's denial of St. Paul's insurance claim constitutes a breach of contract (Count I) and failure to act in good faith (Count II). The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6 (D.Md. 2011). The Court concludes Hartford's denial of St. Paul's claim does not constitute breach of contract, and therefore Hartford did not fail to act in good faith, because the Entrustment Exclusion in

the insurance policy is applicable.    Accordingly, the Court
GRANTS Hartford's Motion for Summary Judgment.

## I.    BACKGROUND

The record reflects the following undisputed facts.   On May
24, 2007, Mohammed Farooq, sole owner of St. Paul, entered into
a financing contract with Tremont New Funding I, LLC for the
purpose of converting the Land Bank Building, located at 2315
St. Paul Street, Baltimore, Maryland, into a 63-unit multi-
family apartment complex.   At the time of contract creation, Mr.
Farooq identified the borrower entity as "to be formed," and the
sponsor and guarantor of the loan as "Mohammed Farooq,
Principal, Red Canyon Properties."   On or about August 1, 2007,
St. Paul acquired a Commercial Inland Marine Insurance Policy
from Hartford to cover the period of August 1, 2007, to August
10, 2008.[1]   The named insured and mailing address on the policy
reads "2315 St. Paul Street LLC, C/O Red Canyon Properties, 211
E. Lombard St., STE 280, Baltimore, MD 21202."

St. Paul contracted with Red Canyon Properties, LLC ("Red
Canyon") to serve as general contractor of the renovation
project.   Ibrahim Sheikh is the Red Canyon employee responsible
for oversight of the day-to-day operations of the project.   Mr.

---

[1]  The policy's renovations coverage endorsement insures
structures up to $1,500,000 for existing structures and $500,000
for new construction.    The maximum limit is listed as
$2,000,000.

2

Sheikh testified under oath that Mr. Farooq is a member of both St. Paul and Red Canyon.  Mr. Sheikh also testified that he and Mr. Farooq have an ongoing business relationship that involves the acquisition and renovation of properties, whose addresses are converted into LLC names, and subsequent procurement of all contracts under Red Canyon.  Mr. Sheikh's sworn testimony regarding his business relationship with Mr. Farooq is supported by various documents in the record.[2]

Upon the referral of a colleague, Mr. Sheikh contracted with Basil Bradford ("Bradford") on October 15, 2007, to complete demolition work to the property within thirty (30) days of the contract's execution.  The contract required Bradford to "[r]emove and cut all excess plumbing pipes, steam pipes, cooling tower on the roof, boilers in sub-basement and other items **as instructed by the architect and owner**" and to "take reasonable steps to secure the Property against casualty, loss and vandalism including, but not limited to, locking all external doors and closing and locking all windows when not

---

[2] See, e.g., Affidavit of M. Ali Farooq acknowledging his authorization as a Red Canyon representative to resolve a mechanic's lien issue that affected St. Paul.  (Pl.'s Opp'n to Def.'s Mot. Summ. J. Ex. 1, at 6, ECF No. 39-1); Withdrawal letter from counsel representing Red Canyon in another matter, which lists Mr. Farooq and Mr. Sheikh as representatives for both St. Paul and Red Canyon.  (Def.'s Mot. Summ. J. Ex. E, at 1, ECF No. 34-6); Tremont New Funding I, LLC loan document listing Mr. Farooq as a principal of Red Canyon.  (Def.'s Mot. Summ. J. Ex. F, at 3, ECF No. 34-7).

physically present at the Property." (Def.'s Mot. Summ. J. Ex. N, at P-00037, ECF No. 34-15)(emphasis added). Prior to the start of the demolition work, Mr. Sheikh and Bradford walked throughout the building, marking items that required removal. Bradford received a key to the property, was granted unfettered access, and often worked unsupervised with his employees. No other contractors were assigned to the property during the October 2007 to November 2007 time period.

During this period, Mr. Sheikh left the country on or about October 28, 2007, and returned the day after Thanksgiving. Mr. Sheikh delegated his managerial duties to Juan Osario, draftsman for the renovation project, in his absence. Upon his return, Mr. Sheikh found that Bradford failed to complete the demolition work and that valuable fixtures, construction equipment, and other items were taken from the property without the owner's permission. Mr. Sheikh thereafter met with Bradford who assumed responsibility for the taken items.

Mr. Sheikh and Bradford entered into a second contract on December 20, 2007 ("Second Contract"), requiring Bradford to "fulfill the terms of his original contract" and also "correct and repair any damage and to replace any **stolen** or destroyed items at his own expense," by January 4, 2008. (Def.'s Mot. Summ. J. Ex. N, at P-00039-40)(emphasis added). The Second Contract specifically states "Mr. Basil Bradford accepts [sole

responsibility] for damage done to the property." (Id. at P-00039).

When Bradford failed to honor the Second Contract, Mr. Sheikh contacted law enforcement and filed an insurance claim with Hartford. Hartford's investigation of the claim commenced March 7, 2008, and ended on or about August 22, 2008. Hartford's investigation involved, *inter alia*, visits to the property, interviews with Bradford and his former employees, and examinations under oath. In a letter dated August 20, 2008, Hartford ultimately denied the claim, contending the policy's Entrustment Exclusion precluded coverage because "the loss in question was caused exclusively by dishonest and criminal acts of a contractor to whom you entrust[ed] the property." (Id. at P-00031). St. Paul subsequently filed this action alleging breach of contract (Count I) and failure to act in good faith (Count II). Discovery is complete and Hartford now seeks summary judgment on both counts.

## II.  STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). In reviewing a motion for summary judgment, the

Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The

nonmoving party may not, however, withstand summary judgment by offering a conclusory, self-serving affidavit that is without corroboration.  See, e.g., National Enters. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000)("[Plaintiff's] self-serving affidavit describing the content of the repurchase agreements is not enough to defeat [defendant's] motion for summary judgment."); Evans v. Techs. App. & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996)(internal citation omitted)("[S]ummary judgment affidavits cannot be conclusory.").

Maryland substantive law governs this diversity action. See 28 U.S.C. § 1652; Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

### III. DISCUSSION

Hartford moves for summary judgment on St. Paul's claims of Breach of Contract (Count I) and Failure to Act in Good Faith (Count II), citing the application of the policy's Entrustment Exclusion and proper denial of coverage as justifications.[3] (Def.'s Mot. Summ. J. Ex. A, at HFIC000438-39).  The Court finds no genuine issue of material fact exists as to either count.

---

[3] Hartford alternatively pleads it is entitled to summary judgment on the basis of St. Paul's alleged multiple breaches of conditions of coverage.  In light of the Court's ruling on the Enstrustment Exclusion, the Court need not address this argument.

A.  **Breach of Contract (Count I)**

Under Maryland law, "[a]n insurance policy is interpreted in the same manner as any other contract." French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir. 2006) (citing Nationwide Ins. Co. v. Rhodes, 732 A.2d 388, 390 (Md.Ct.Spec.App. 1999)). Contract law, therefore, requires "that a contract be interpreted as a whole, in accordance with the objective law of contracts, to determine its character and purpose." Anderson v. General Cas. Ins. Co., 935 A.2d 746, 752 (Md. 2007)(quoting United Servs. Auto Ass'n v. Riley, 899 A.2d 819, 833 (2006)). The court analyzes the "plain language of the contract according words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." Kendall v. Nationwide Ins. Co., 702 A.2d 767, 772 (Md. 1997).  If contract terms are unambiguous, the court "may construe the insurance contract as a matter of law." MAMSI Life & Health Ins. Co. v. Callaway, 825 A.2d 995, 1005 (Md. 2003).  Conversely, ambiguities are to be construed against the insurer.  Id. at 1006.

Hartford's Commercial Inland Marine Insurance Policy provides coverage for "direct physical 'loss' to Covered Property caused by any of the Covered Causes of Loss" except "those causes of 'loss' listed in the Exclusions." (Def.'s Mot. Summ. J. Ex. A, at HFIC000438-39).  The policy's Entrustment

8

Exclusion removes coverage for "dishonest or criminal acts" by the insured "or anyone else to whom [the insured] entrust the property for any purpose." (<u>Id.</u> at HFIC000442-43).

## 1. St. Paul Entrusted the Property to Bradford

Hartford's Entrustment Exclusion applies because St. Paul entrusted its property to Bradford.  Hartford argues that there is no genuine issue of material fact that St. Paul entrusted the property to Bradford because, as the insured's agent, Red Canyon granted Bradford unfettered access to the property. (Def.'s Mot. Summ. J., at 14-15).   Hartford further argues the undisputed facts reveal that St. Paul and Red Canyon did not engage in an arms-length contractual relationship, but that the two were interwoven business entities who engaged in practices regarding the acquisition and renovation of the property jointly with Red Canyon acting on St. Paul's behalf as the general contractor. (<u>Id.</u> at 16-19).   In support of this argument Hartford sets forth the following undisputed facts:

1) A copy of St. Paul's insurance policy addressing the insured as "2315 St. Paul Street LLC, C/O Red Canyon Properties, 211 E. Lombard St., Ste 280, Baltimore, MD 21202." (Def.'s Mot. Summ. J. Ex. A, at HFIC000415-17).

2) Mr. Sheikh's sworn testimony that Mr. Farooq holds an ownership interest in both St. Paul and Red Canyon. (<u>Id.</u> Ex. B, at HFIC000310).

3) Mr. Sheikh's sworn testimony that he has prior business dealings with Mr. Farooq and that all

contracts related to building renovations "[go] under" Red Canyon. (Id. at HFIC000310-12).

4) A conditional waiver and release signed by Mr. Farooq as a Red Canyon representative. (Id. Ex. C).

5) A withdrawal letter from counsel representing St. Paul and Red Canyon in another matter, with Mr. Farooq and Mr. Sheikh signing as representatives for both entities. (Id. Ex. E).

6) Mr. Farooq's loan documents for the St. Paul property representing himself as "Principal, Red Canyon Properties." (Id. Ex. F, at 3).

7) Two of Mr. Sheikh's affidavits, filed in other cases, contending he is an authorized representative of St. Paul. (Def.'s Mot. Summ. J. Exs. H,I).

8) Hartford's denial letter addressed to Mr. Sheikh at "2315 St. Paul Street, LLC, c/o Red Canyon Properties" and the Developer Fee Agreement between St. Paul and Mr. Farooq, listing Red Canyon's address for both entities. (Id. Ex. N, at P-00031, 70).

Conversely, St. Paul argues that it did not entrust the property to Bradford because it had no relationship with him, but rather delegated all supervisory and hiring authority to Red Canyon.[4] (Pl.'s Opp'n to Def.'s Mot. Summ. J., at 12-18, ECF No. 39). In the alternative, St. Paul argues that assuming,

---

[4] St. Paul also argues that the Entrustment Exclusion does not apply because it cannot "entrust" fixtures or the other items at issue in this case. The plain language of the policy covers the entrustment of "the property" in general. There is no distinction between personal property and fixtures. Moreover, the policy's coverage of "existing structures intended to become a permanent part of the completed project" suggests that these structures are a part of the "property" referenced in the language of the Entrustment Exclusion.

*arguendo,* an entrustment did occur, it was only between Red Canyon and Bradford.  St. Paul further argues that neither St. Paul nor its sole member Mr. Farooq holds any interest in Red Canyon beyond a contractural relationship.  In support of this argument, St. Paul sets forth Mr. Farooq's affidavit which states:

1) Mr. Farooq is not, and has never been, a member, employee, or owner of Red Canyon. (Id. Ex. 1, at ¶ 12).

2) St. Paul's "only relationship to [Red Canyon] is via a contractual, arms-length transaction." (Id. at ¶ 14).

3) Mr. Sheikh is not, and has never been, a member, employee, or authorized representative of St. Paul; and that his testimony regarding Mr. Farooq's membership or ownership in Red Canyon is incorrect. (Id. at ¶ 15).

4) St. Paul "did not have an agency relationship with Ibrahim Sheikh." (Id. at ¶ 16).

5) In a previous case, Red Canyon designated Mr. Farooq an authorized representative for the limited purpose of resolving a mechanic's lien issue that affected St. Paul. (Id. at ¶ 39).

Mr. Farooq's affidavit also provides a counter explanation for each of the relationship documents provided by Hartford.  This affidavit, however, failed to present evidence sufficient to create a genuine dispute concerning St. Paul's entrustment of the property to Bradford.

   In this case, the record is replete with undisputed evidence that St. Paul and Red Canyon are interwoven entities,

thereby imputing the acts of Red Canyon to St. Paul. Perhaps most persuasive on this issue is the loan document listing Mr. Farooq as a principal of Red Canyon, the conditional waiver and release signed by Mr. Farooq as a representative of Red Canyon, the two affidavits in other matters attesting to Mr. Sheikh's position as a representative of St. Paul, and the Developer Fee Agreement that utilizes Red Canyon's address for both St. Paul and Mr. Farooq. St. Paul's dispute regarding these documents is essentially that a limited agency relationship was created in these cases for the sole purpose of addressing the pending issues.

Viewing the aforementioned facts in a light most favorable to St. Paul, it is clear that St. Paul and Red Canyon share a relationship that reaches beyond the parameters of a "contractual, arms-length transaction." Rather than supplement the record with documentation of Red Canyon's ownership structure, St. Paul appends an affidavit to its opposition refuting the agency relationship. As previously noted, however, a non-moving party cannot create a genuine dispute simply by offering a conclusory, self-serving affidavit that is without corroboration. St. Paul's affidavit contradicts itself and is an attempt to contradict the sworn statement of Mr. Sheikh and the other documentation mentioned above. As a matter of law, St. Paul's affidavit is insufficient to create a genuine issue

12

of material fact as to whether Red Canyon acted on behalf of St. Paul in entrusting the property to Bradford.

Having found Red Canyon acted on behalf of St. Paul, the Court now turns to the actual entrustment. Since the contract fails to define the term entrustment, this Court adopts the definition of "entrust" as "to confer trust upon; deliver something to (another) in trust. [T]o commit or surrender to another with a certain confidence regarding his care, use or disposal." Webster's Third Int'l Dictionary 759 (1993); see also Woldford v. Landmark Amer. Ins. Co., 474 S.E.2d 458, 462 (W.Va. 1996)("'[E]ntrust' means 'to commit or surrender to another with a certain confidence regarding his care, use, or disposal of.'"); Cougar Sport, Inc. v. Hartford Ins. Co. of Midwest, 737 N.Y.S.2d 770, 773 (N.Y. App. Div. 2000)("In using the word 'entrust,' the parties in this case 'must be deemed to have entertained the idea of a surrender or delivery or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient.'").

It is undisputed that access to the property was turned over to Bradford with confidence that he would care for the building and its contents. First, Mr. Sheikh testified under oath that prior to hiring Bradford, he sought the referral of a colleague because he wanted to hire a subcontractor he could

trust. (Def.'s Mot. Summ. J. Ex. B, at HFIC000313-14). Second, Mr. Bradford received a set of keys to the property and often worked unsupervised. (Id. at HFIC000317). Third, within a few weeks of hiring Bradford, Mr. Sheikh traveled out of the country, leaving Bradford with the keys and unfettered access to the property. (Id.). Finally, the first contract Bradford signed required Bradford to take "reasonable steps to secure the Property against casualty, loss and vandalism including, but not limited to, locking all external doors and closing and locking all windows when not physically present at the Property." (Def.'s Mot. Summ. J. Ex. N, at P-00037). Each of these actions illustrate that the property was surrendered to Bradford with confidence that he would complete the demolition work and secure the building. The Court, therefore, finds that it is undisputed that St. Paul, through Red Canyon, entrusted the property to Bradford. The Court now turns to the issue of who committed the theft.

### 2. Bradford Assumed Responsibility for the Removed Items

Hartford's Entrustment Exclusion applies because St. Paul entrusted the property to Bradford, who subsequently assumed responsibility for the theft of St. Paul's missing items. Hartford argues there is no genuine issue of material fact regarding the identification of the culpable individual. They argue, rather, that the undisputed facts reveal that Bradford

14

accepted full responsibility for the theft.  (Def.'s Mot. Summ. J., at 15).  To support its argument Hartford relies upon the language of the Second Contract, which states "Mr. Basil Bradford accepts [sole responsibility] for damage done to the property."  (Def.'s Mot. Summ. J. Ex. N, at P-00039).  Hartford also relies upon the sworn testimony of Mr. Sheikh, who confirms that Bradford not only assumed responsibility for the theft, but that law enforcement ceased its investigation into the theft upon a finding that Bradford identified himself as the culprit. (Id. at HFIC000320-24).

St. Paul argues Hartford failed to conclusively show Bradford committed the theft in question, citing the lack of a conviction or charge as a reason.  (Pl.'s Opp'n to Def.'s Mot. Summ. J., at 23-26).  St. Paul avers that Bradford's assumption of responsibility in the Second Contract could be "merely an admission of...carelessness" or an "economic decision" reached to complete the project.  (Id. at 25).  Moreover, St. Paul argues that Hartford's claim notes are inconsistent and contradictory as to whether Bradford or one of his employees is responsible.  (Id.).  To support its argument, St. Paul again relies upon the affidavit of Mr. Farooq, which states that he was informed that Bradford believed one of his workers committed the theft and that he is unaware of the identity of the persons

who stole the items from the property.  (Id. Ex. 1, at ¶¶ 20, 29).

Based upon the sworn testimony of Mr. Sheikh and the language of the Second Contract, this Court finds that there is no genuine dispute of material fact that Bradford was responsible for the theft of the property.  Contrary to St. Paul's speculation regarding the meaning of Bradford's admission, the Second Contract specifies the substance of the responsibility Bradford assumed.  (See Def.'s Mot. Summ. J. Ex. N, at P-00039).  For example, the plain language clearly states that Bradford "accepts [sole responsibility] for damage done to the Property.  This damage, includes but is not limited to, the **theft** of wood trim from the board room...**theft** of the brass railings from the interior stairwell, [and] the **theft** of light fixtures from the interior stairwells," among other things.  (Id.).  This language identifying the scope of Bradford's admission is unambiguous.  Furthermore, it is undisputed, based upon the testimony of Mr. Sheikh, that Bradford took the time to review the language of the Second Contract and asked questions prior to signing.  (Def.'s Mot. Summ. J. Ex. B, at HFIC000323).  Viewing these facts in a light most favorable to St. Paul, the Court finds it undisputed that Bradford is responsible for the theft of the property St. Paul entrusted to him.  Hartford's Motion for Summary Judgment as to Count I is therefore granted.

**B.**   **Failure to Act in Good Faith (Count II)**

In evaluating a claim, Maryland law requires insurers to make "an informed decision based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made the decision on the claim." Md. Code Ann., Cts. & Jud. Proc. § 3-1701(a)(4) (West 2012).   A good faith determination under this statute requires the court to review the totality of the circumstances, which includes efforts of the insurer to resolve the dispute promptly and "the insurer's diligence and thoroughness in investgating the facts specifically pertinent to coverage." Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co., 636 F.Supp.2d 481, 486-87 (D.Md. 2009)(quoting State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 63 (Fla. 1995)).   However, the court cannot find that the insured failed to act in good faith without a finding that the insured breached the contract in question.

As previously noted, this Court finds that Hartford did not breach the insurance contract with St. Paul because Hartford properly denied coverage on the basis of the policy's Entrustment Exclusion.   Hartford's Motion for Summary Judgment as to Count II is therefore granted.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Hartford's denial of St. Paul's insurance claim does not

constitute a breach of contract or failure to act in good faith because the Entrustment Exclusion in the policy is applicable. Accordingly, it is hereby

ORDERED that Defendant Hartford's Motion for Summary Judgment is GRANTED.

The Clerk is directed to ENTER JUDGMENT in favor of Defendant Hartford Fire Insurance Company and against Plaintiff 2315 St. Paul Street, LLC pursuant to Federal Rule of Civil Procedure 58. A separate Rule 58 Judgment Order will be entered with the Memorandum Opinion. The Clerk is directed to forward a copy of this Order to counsel of record.

Entered this 25th day of June, 2012

                                        /s/
                          _____
                          George L. Russell, III
                          United States District Judge